**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| ROGER LYNN BURROW, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No_____ |
| VS. | § | |
| | § | |
| BANK OF AMERICA, N.A. and, | § | With Jury Demand Endorsed |
| BAYVIEW LOAN SERVICING, LLC, | § | |
| | § | |
| Defendants. | § | |

**COMPLAINT**

Plaintiff, Roger Lynn Burrow ("Plaintiff"), by and through counsel, for his Complaint against Defendants, Bank of America, N.A. ("Bank of America") and Bayview Loan Servicing, LLC ("Bayview") (collectively "Defendants") states as follows:

**I. INTRODUCTION**

1.      Plaintiff asserts federal and Texas State law causes of action against Defendants based on his claims Defendants engaged in willful, knowing, and harassing actions against him, in furtherance of their efforts to collect a debt from him after the debt was discharged in Plaintiff's bankruptcy case and after Plaintiff surrendered the collateral on the subject debt, such actions being part of Defendants' policies, procedures, practices and malicious and illegal design to profit by collecting on debts included in and discharged in bankruptcy by taking advantage of unsophisticated debtors, like Plaintiff. Because Bayview is and has been the subservicer and agent for Bank of America at all relevant times, Bank of America is equally liable for the actions of Bayview at issue.

1

2.      The specific claims that Plaintiff asserts against Defendants are for their willful, knowing, and/or negligent violations of: 1) Chapter 41, the Consumer Credit Protection Credit Act, of Title 15 (Commerce and Trade) of the United States Code, 15 U.S.C. § 1681 *et seq.*, (the Fair Credit Reporting Act, "FCRA") which relates to the dissemination of consumer credit and other financial information; 2) Tex. Fin. Code § 392.001 *et. seq*, the Texas Debt Collection Act (the "TDCA"); 3) 15 U.S.C. § 1692 *et seq*, the Fair Debt Collection Practices Act (the "FDCPA) (against Bayview only)., 4) the common law tort of invasion of privacy; and 5) the bankruptcy discharge injunction. Plaintiff seeks to recover actual, statutory, and punitive damages, legal fees and expenses against Defendants.

## II. PARTIES

3.      Plaintiff is a natural person residing in Dallas County, Texas and he is a "consumer" as defined by the FCRA.

4.      Defendant Bank of America is a national bank which can be served by delivery citation to its registered agent, CT Corporation System, 1999 Bryan St. Suite 900, Dallas, TX 75201.

5.      Defendant Bayview is a foreign limited liability company who may be served by delivering citation to CT Corporation System, 1999 Bryan St. Suite 900, Dallas, TX 75201.

6.      Defendants are "persons" and "users" of consumer credit and other financial information, as said terms are defined and contemplated under the FCRA.

7.      Defendants are "debt collectors" as defined by Tex. Fin. Code § 392.001(6).

### III. Jurisdiction and Venue

8.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, 1334 and 1337(a) and 15 U.S.C. § 1681p and 28 U.S.C. §§2201-2202.

9.    Venue in this district is proper because Defendants transacts business in this district, Plaintiff filed his bankruptcy in this district and the conduct complained of occurred in this district.

### IV. Factual Allegations

**A.    Plaintiff's Bankruptcy Case and the Discharge of the Subject Debt and Surrender of the Collateral/Property Therein**

10.    On December 1, 2009, Plaintiff filed his subject bankruptcy case under Chapter 13 of the U.S. Bankruptcy Code, case number was 09-38225 ("Bankruptcy Case"), in the Northern District of Texas Bankruptcy Court ("Bankruptcy Court").

11.    Prior to Plaintiff filing his Bankruptcy Case, Bank of America asserted a pre-petition claim against him in its attempt to collect a consumer debt he allegedly owed.  The debt required Plaintiff to pay money arising out of transactions in which money, property, insurance, or services were the subject thereof and the same were primarily for personal, family, or household purposes.  In Plaintiff's bankruptcy petition, the subject claim was listed in Schedule "D" as a secured claim, such claim was secured by a lien on Plaintiff's prior home located at 6014 Baskerville Dr., Rowlett, Texas 75087 (the "Property"), and was identified as Account No. XXXXX0284 (the "Loan" or "Account").

12.    On December 1, 2009, Plaintiff filed a mailing matrix ("Mailing Matrix") with the Bankruptcy Court that provided Bank of America's correct address.

13.     On June 22, 2012, the Clerk of the Bankruptcy Court mailed a copy of the "Order Converting Case to Chapter 7, Meeting of Creditors and Deadlines" to all creditors, including Defendant Bank of America and other parties in the Bankruptcy Case based on the mailing matrix previously filed therein. This mailing constituted formal notice to Bank of America of the conversion of the Bankruptcy Case to one under Chapter 7 of the U.S. Bankruptcy Code. This notice also warned all creditors, including Defendant, in conspicuous language against violating the automatic stay pursuant to 11 U.S.C. §362. The United States Postal Service did not return the notice sent to Bank of America; thus, there is a presumption it was received. On June 13, 2012, Plaintiff filed his voluntary conversion to Chapter 7 and the Bankruptcy Case was converted to a case under Chapter 7 of the U.S. Bankruptcy Code.

14.     After the Bankruptcy Case was converted to a Chapter 7 case, Plaintiff filed his Statement of Intentions on July 5, 2012 and listed the Property as "surrendered" therein. A copy of the Plaintiff's Statement of Intentions is attached hereto as Exhibit "A

1.      On September 21, 2012, the Bankruptcy Court issued an order granting Plaintiff a discharge ("Discharge Order") (the said order followed Official Form B18, including the explanatory language contained therein).  The order discharged Plaintiff from any liability for Defendant's pre-petition claim.  Included with the Discharge Order was an explanation of the general injunction prohibiting Bank of America and others holding pre-petition claims from attempting to collect those claims from Plaintiff.  The Discharge Order and its notice warned all creditors, including Defendant, in conspicuous language that "**Collection of Discharged Debts Prohibited**" and that "a creditor is not permitted

to contact a debtor by mail, phone, or otherwise…or take any other action to collect a discharged debt from the debtor."

15.     On September 23, 2012, the Bankruptcy Court's Bankruptcy Noticing Center mailed a copy of the Discharge Order to Bank of America.  This mailing constituted formal notice of Plaintiff's discharge and the replacement of the automatic stay with the discharge injunction of 11 U.S.C. §524(a). The Discharge Order and notice mailed to Defendant Bank of America was not returned. If the United States Postal Service has not returned the mailing of the Discharge Order and notice, there is a presumption Bank of America received it.  A copy of the Discharge Order is attached hereto as Exhibit "B" and is incorporated herein by reference.

16.     At no time during the pendency of the Bankruptcy Case did Bank of America or any other person or entity object to or dispute the details of the subject claim listed in Schedule "D" of Plaintiff's bankruptcy petition or any amendments thereto, if any.

17.     At no time during the pendency of the Bankruptcy Case did Plaintiff reaffirm the subject debt.

18.     At no time during the pendency of the Bankruptcy Case was Bank of America's pre-petition claim at issue declared to be non-dischargeable by the Bankruptcy Court.

**B.      Defendant Bayview Begins Servicing the Subject Discharged Debt.**

19.     On or about May 16, 2013, Defendant Bayview, as Bank of America's subservicer, began servicing the discharged debt on the Account.

5

C.     **Plaintiff's First Lawsuit Against Defendants for Their Collection Actions on the Subject Account and Same Discharged Debt at Issue and the Settlement Therein**

20.    On or about November 19, 2013, Plaintiff filed a complaint against Bank of America, and later amended to add Bayview as a party defendant, in Civil Action No. 3:13-CV-04613-G, in the United States District Court for the Northern District of Texas, raising claims against Defendants for the same causes of action asserted in this case, along with a claim under the Telephone Consumer Protection Act, 47 U.S.C. 227, *et seq.* ("TCPA") and with the exception of Plaintiff's claim under the FDCPA, based on Defendant's alleged post-discharge collection actions on the discharged debt for the Account based on Defendants sending collection statements and letters to Plaintiff demanding payment and pulling Plaintiff's credit reports--*the same kind of collection activity at issue in this case*--on the same discharged debt and Account.

21.    On or about August 24, 2014, the parties entered into a Settlement Agreement and Release on all claims (the "Settlement") in the First Lawsuit, and November 19, 2014, the First Lawsuit was dismissed with prejudice.

D.     **Defendants' Post-Discharge and Post-Settlement Actions Taken Against Plaintiff to Collect the Discharged Debt from Plaintiff in Violation of the Discharge Injunction and Texas State and Federal Law.**

22.    On several occasions after the discharge was granted in Plaintiff's Bankruptcy Case, after Plaintiff surrendered the Property and after litigating and entering into the Settlement in the First Lawsuit with Plaintiff, Defendants engaged in illegal collection actions and harassment against Plaintiff in continuance of its efforts to collect the subject discharged debt by:

    (1)     Bank of America repeatedly accessing and reviewing Plaintiff's consumer

6

credit report with TransUnion without a legally permissible purpose on at least twelve (12) occasions;

(2) Bank of America furnishing false and inaccurate information to TransUnion on the Account;

(3) Bayview sending Plaintiff at least five (5) Account billing demanding payment of the discharged debt by a date certain; and

(4) Bayview sending Plaintiff at least two (2) letters on the Account requesting he take actions to benefit Defendants and to coerce Plaintiff to pay the subject discharged debt.

At all times at issue, Bayview was the subservicer and agent for Bank of America; thus, Bank of America is jointly and severally liable for Bayview's actions at issue. More specific information regarding Defendants' actions is stated below.

1. **Bank of America's Twelve (12) Impermissible Credit Pulls and Account Reviews of Plaintiff's Consumer Credit Report**

23. Despite receiving communications from the Bankruptcy Court and Plaintiff about the Bankruptcy Case and Discharge, as well as being sued by Plaintiff in the First Lawsuit and entering into a Settlement with Plaintiff therein, Bank of America subsequently engaged in debt collection activity against Plaintiff by illegally accessing and reviewing his credit reports with TransUnion.

24. Despite the change in the legal status of the Account upon the discharge of its underlying debt in Plaintiff's Bankruptcy Case, making the debt on the Account legally uncollectible and closing the Account by operation of law, Defendant, post-discharge and even after the Settlement of the First Lawsuit, impermissibly and illegally accessed and reviewed Plaintiff's consumer credit report with TransUnion on at least **twelve (12) occasions** on the following days:

1) September 8, 2014;
2) September 9, 2014;
3) October 8, 2014;
4) November 8, 2014;
5) December 6, 2014;
6) December 7, 2014;
7) December 17, 2014;
8) January 9, 2015;
9) February 7, 2015;
10) March 1, 2014;
11) March 7, 2015; and
12) April 9, 2015.

25. True and correct copies of relevant portions of Plaintiff's TransUnion credit report showing Defendant's impermissible account reviews and inaccurate reporting are attached hereto as Exhibit "C."

  **2. Bank of America's Misrepresentations and Furnishing of False Information to TransUnion in Order to Gain Access to Plaintiff's Credit Reports**

26. In order to gain access to Plaintiff's credit report and personal financial information, Bank of America furnished and reported false information to TransUnion, misrepresenting it had a permissible purpose to access and review Plaintiff's consumer credit report, which was, ostensibly, to insure or monitor its accounts. However, since there was no open and active account between Bank of America and Plaintiff post-discharge of the debt on the Account and Plaintiff never sought credit from Bank of America after he received his bankruptcy discharge, Bank of America's obvious and only purpose for accessing and reviewing Plaintiff's credit report from TransUnion was to gather information about Plaintiff in furtherance of its collection attempts on the subject discharged debt. If Bank of America denies this was its purpose, then its was trying to gain access to Plaintiff's personal financial information which is protected by law.

### 3.  Bayview's Five (5) Billing Statements it Sent to Plaintiff Demanding Payment of the Discharged Debt

27.     Despite receiving information about Plaintiff's Bankruptcy Case and discharge and being sued by Plaintiff in the First Lawsuit and entering into a Settlement with Plaintiff therein, Bayview, as a subservicer for Bank of America, thereafter, engaged in debt collection activity against Plaintiff on the subject discharged debt and Account by sending Plaintiff billing statements, with enclosed payment coupons, requesting payment of the discharged debt in a specified amount by a date certain.

28.     On or about September 16, 2014, Defendant sent Plaintiff an Account Statement on the Account, complete with payment coupon and return envelope, demanding a "Current Post-Petition Amount Due: $1,542.70" by October 1, 2014, (comprised of "Principal: $274.32," "Interest: $643.91" and Escrow (Taxes and Insurance) $624.47," "Total Fees/Charges Assessed: $73.91," "Post-Petition Past Due Amounts DUE $56,375.11" and "**Total Amount Due $57,917.81**." "The "Account Information" in the statement stated there was an "Outstanding Principal Balance: $143,183.86," "Post-Petition Interest Rate: 5.79%," and "Late Charge Balance of $688.85.  Also, the statement represented that if the payment was received after October 16, 2014, there would be an additional late charge of $45.91 due.

29.     A redacted copy of this September 16, 2014 statement is attached hereto as Exhibit "D."

30.     On or about October 16, 2014, Defendant sent Plaintiff an Account Statement on the Account, complete with payment coupon and return envelope, demanding a "Current Post-Petition Amount Due: $1,542.70" by November 1, 2014, (comprised of "Principal: $276.97," "Interest: $641.26" and Escrow (Taxes and Insurance) $624.47," "Total

Fees/Charges Assessed: $59.91," "Post-Petition Past Due Amounts DUE $57,963.72" and "**Total Amount Due $59,506.42**." "The "Account Information" in the statement stated there was an "Outstanding Principal Balance: $143,183.86," "Post-Petition Interest Rate: 5.79%," and "Late Charge Balance of $1,654.00. Also, the statement represented that if the payment was received after November 16, 2014, there would be an additional late charge of $45.91 due.

31.     A redacted copy of this October 16, 2014 statement is attached hereto as Exhibit "E."

32.     On or about November 17, 2014, Defendant sent Plaintiff an Account Statement on the Account, complete with payment coupon and return envelope, demanding a "Current Post-Petition Amount Due: $1,423.58" by December 1, 2014, (comprised of "Principal: $278.31," "Interest: $639.92" and Escrow (Taxes and Insurance) $505.35," "Total Fees/Charges Assessed: $59.91," "Post-Petition Past Due Amounts DUE $59,552.33" and "**Total Amount Due $60,975.91**." "The "Account Information" in the statement stated there was an "Outstanding Principal Balance: $143,183.86," "Post-Petition Interest Rate: 5.79%," and "Late Charge Balance of $1,668.00. Also, the statement represented that if the payment was received after December 16, 2014, there would be an additional late charge of $45.91 due.

33.     A redacted copy of this November 17, 2014 statement is attached hereto as Exhibit "F."

34.     On or about December 16, 2014, Defendant sent Plaintiff an Account Statement on the Account, complete with payment coupon and return envelope, demanding a "Current Post-Petition Amount Due: $1,423.58" by January 1, 2015, (comprised of "Principal: $279.65," "Interest: $638.58" and Escrow (Taxes and Insurance) $505.35," "Total Fees/Charges Assessed: $45.91," "Post-Petition Past Due Amounts DUE $61,021.82"

and "**Total Amount Due $62,445.40**." "The "Account Information" in the statement stated there was an "Outstanding Principal Balance: $143,183.86," "Post-Petition Interest Rate: 5.79%," and "Late Charge Balance of $826.38.  Also, the statement represented that if the payment was received after January 16, 2015, there would be an additional late charge of $45.91 due.

35.     A redacted copy of this December 16, 2014 statement is attached hereto as Exhibit "G."

36.     On or about January 16, 2015, Defendant sent Plaintiff an Account Statement on the Account, complete with payment coupon and return envelope, demanding a "Current Post-Petition Amount Due: $1,423.58" by January 1, 2015, (comprised of "Principal: $281.00," "Interest: $637.23" and Escrow (Taxes and Insurance) $505.35," "Total Fees/Charges Assessed: $59.91," "Post-Petition Past Due Amounts DUE $62,491.31" and "**Total Amount Due $63,314.88**." "The "Account Information" in the statement stated there was an "Outstanding Principal Balance: $143,183.86," "Post-Petition Interest Rate: 5.79%," and "Late Charge Balance of $872.29.  Also, the statement represented that if the payment was received after February 16, 2015, there would be an additional late charge of $45.91 due.

37.     A redacted copy of this January 16, 2015 statement is attached hereto as Exhibit "H."

> **4.     Bayview's Two (2) Correspondences it Sent to Plaintiff on the Account Demanding he Pay the Discharged Debt or Take Action to Coerce Payment From Him**

38.     On or about March 4, 2015, Bayview sent Plaintiff an Annual Escrow Account Disclosure Statement, complete with payment coupon stating "Payment Due Date: 05/01/11" and return envelope demanding an Escrow Shortage Payment Option of

"Lump Sum: $836.40" and "New Monthly Payment Amount: $1,446.90" or "New Monthly Mortgage Payment Amount: $1,516.60."

39.     A redacted copy of this March 4, 2015 statement is attached hereto as Exhibit "I."

## V. GROUNDS FOR RELIEF – COUNT I

### FAIR CREDIT REPORTING ACT (FCRA 15 U.S.C. §1681 *et. seq*)

40.     Plaintiff repeats, re-alleges, and incorporates by reference all paragraphs above as if fully rewritten here.

41.     The FCRA establishes very specific rules limiting when and why an entity can obtain a consumer report:

(f) Certain use or obtaining of information prohibited. – A person shall not use or obtain a consumer report for any purpose unless –

(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and

(2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

*See* 15 U.S.C. § 1681b (f).

42.     Section 1681b(a)(3) lists the all-inclusive purposes for which a consumer report can be obtained:

(a) In General. – * * * [A] consumer reporting agency may furnish a consumer report under the following circumstances and no other:

***

(3) To a person which it has reason to believe –

(A)  intends  to  use  the  information  in  connection  with  a  credit

transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;

***

(F) otherwise has a legitimate business need for the information * * *

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

*See* 15 U.S.C. § 1681b (a)(3).

43.   On at least twelve (12) occasions after the Discharge Order was signed and the Property surrendered, Defendant Bank of America requested and obtained access to Plaintiff's consumer report with TransUnion.

44.   On all such occasions at issue, Bank of America misrepresented to TransUnion that such requests were made to review or insure its accounts so it could intentionally and maliciously access Plaintiff's credit reports and confidential information therein.

45.   When requesting and obtaining access to Plaintiff's consumer report and credit information from TransUnion, as described herein, Bank of America had actual knowledge that it did not have a permissible purpose to obtain such access and information.

46.   At all relevant times, Defendants had actual knowledge that as of the granting and entry of the Discharge Order, the Account was closed and Defendants were legally prohibited from pursuing any collection against it or communicating with Plaintiff about the Account and the underlying discharged debt to justify an account review of his credit information. Accordingly, Bank of America had actual knowledge that it did not have a

permissible purpose to access Plaintiff's credit reports with TransUnion during the times at issue.

47.     At the time Bank of America impermissibly accessed Plaintiff's consumer credit reports, it had actual knowledge that Plaintiff had not requested credit from it, nor had he initiated a credit transaction with Bank of America any time since the Bankruptcy Court signed the Discharge Order. Therefore, Bank of America had actual knowledge that it did not have a legally permissible purpose to access Plaintiff's consumer report and credit information as it did.

48.     Subsequent to the Bankruptcy Court's granting of the Discharge Order and Plaintiff's surrender of the Property, as well as the parties' prior Settlement for similar collection action for impermissible pulls, Bank of America had actual knowledge that Plaintiff did not authorize access and review of his consumer report. At all material times, Bank of America had actual knowledge it did not have a legally permissible purpose to access Plaintiff's consumer report and credit information when it engaged in such action.

49.     For Defendant to repeatedly request and obtain Plaintiff's private personal and financial information, in the face of actual knowledge that it had no permissible purpose to do so, constitutes its knowing and willful violations of the FCRA.

50.     After a reasonable time to conduct discovery, Plaintiff believes he can prove Bank of America requested and obtained Plaintiff's private personal and financial information from TransUnion for the illegal purpose of attempting to collect on the subject discharged debt.

51.     After a reasonable time to conduct discovery, Plaintiff believes he can prove Bank of America used false pretenses, namely the representation it intended to use Plaintiff's

consumer report "to monitor or insure its account," to obtain Plaintiff's private personal and financial information for the illegal purpose of attempting to collect on the underlying discharged debt.

52. After a reasonable time to conduct discovery, Plaintiff believes he can prove, additionally and/or in the alternative, Bank of America is unwilling or unable to prevent its systems from requesting and obtaining Plaintiff's consumer report without a permissible purpose, thereby subjecting Plaintiff to having his private, personal and financial information disclosed without his consent, authorization or other legal justification.

53. As a direct and proximate result of Bank of America's conduct, as outlined above, Plaintiff has suffered, and will continue to suffer, substantial injury, including, but not limited to, mental anguish and emotional distress from the ongoing invasion of his privacy, entitling Plaintiff to an award of actual damages in an amount to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

54. Bank of America's conduct reveals a conscious and reckless disregard of Plaintiff's rights. The injuries suffered by Plaintiff were attended by circumstances of fraud, malice, and willful and wanton misconduct entitling Plaintiff to punitive damages pursuant 15 U.S.C. § 1681n(a)(2).

55. Since Bank of America's illegal pulling of Plaintiff's consumer reports will have a continuing negative effect on Plaintiff and the violations are ongoing in nature, Bank of America is liable for any and all future harm suffered by Plaintiff as a result of its conduct.

## VI. GROUNDS FOR RELIEF – COUNT II

## TEXAS FINANCE CODE – TEXAS DEBT COLLECTION ACT (TDCA)

56.    Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs 10-41, above, as if fully rewritten here in their entirety.

57.    Defendants have violated the Texas Finance Code in numerous ways including, but not limited to, the following:

a) Tex. Fin. Code § 392.301(a)(8), which prohibits Defendants from taking an action prohibited by law, since the FCRA prohibits the access and review of a consumer report, the discharge injunction prohibits Defendants from attempting to collect the subject discharged debt from Plaintiff, and the common law prohibits Defendants from invading Plaintiff's privacy, for the reasons raised by Plaintiff in this Complaint as to these claims, Defendants have violated this section of the TDCA;

b) Tex. Fin. Code § 392.304(a)(8), which prohibits Defendants from misrepresenting the character, extent, or amount of Plaintiff's debt, or misrepresenting the status of Plaintiff's debt in a judicial or governmental proceeding, since Bank of America alleged to TransUnion that it was justified in accessing Plaintiff's consumer report was for monitoring its accounts or other permissible reason, that was a misrepresentation of the status of the debt at issue; additionally, the statements and letters Bayview sent to Plaintiff at issue misrepresented the character and amount of the debt on the Account; and

c) Tex. Fin. Code § 392.304(a)(19), which prohibits Defendant's use of false representations or deceptive means to collect a debt, since the debt at issue had been discharged in Plaintiff's Bankruptcy Case prior to the times at issue and there were no other transactions between the parties after the discharge, the only conclusion that can be

16

drawn is the purpose of Bayview sending Plaintiff the Statements and letters at issue and Bank of America furnishing false information to TransUnion and accessing Plaintiff's consumer report, post-discharge, and Defendant's other actions at issue were false representations and deceptive means to collect the subject discharged debt from Plaintiff.

58.    Under Tex. Fin. Code Ann. § 392.403, the said violations render Defendants liable to Plaintiff for actual damages, statutory damages, for injunctive relief, costs, and reasonable attorney's fees. Plaintiff's injuries resulted from Defendants' gross negligence, malice, and/or actual fraud, which entitle Plaintiff to punitive damages.

59.    Due to Defendants' conduct at issue, Plaintiff was forced to hire counsel and his damages include reasonable attorney's fees incurred in prosecuting this claim.

### VII. GROUNDS FOR RELIEF – COUNT III

### FEDERAL FAIR DEBT COLLECTION PRACTICES ACT (FDCPA)
### (AGAINST BAYVIEW ONLY)

60.    Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs 10-41, above, as if fully rewritten here in their entirety.

61.    The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. § 1692 *et seq*. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. *See* 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics,

and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

62.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. §1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. §1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exist a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

63.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. *See* 15 U.S.C. §1692b.

64.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive

debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §1692e.

65.    The FDCPA is a strict liability statute, which provides for actual and statutory damages upon the showing of a single violation. Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages.

66.    The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. *Sprinkle v. SB&C Ltd*., 472 F. Supp. 1235 (W.D. Wash. 2006). The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc*., 460 F.3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C. §1601 *et seq*., is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

67.    The FDCPA is to be interpreted in accordance with the "least sophisticated consumer" standard. *See Brown v. Card Serv. Ctr*, 464 F.3d 450, 453 fn1 (3d Cir. 2006); *Graziano v. Harrison*, 950 F.2d 107, 111, fn5 (3rd Cir. 1991). The FDCPA was not "made for the protection of experts, but for the public - that vast multitude which includes the ignorant, the unthinking, and the credulous, and the fact that a false statement may be obviously false to those who are trained and experienced does not change its character, nor take away its power to deceive others less experienced." *Id*. The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naïve and trusting, against deceptive collection practices, and protects collectors against

liability for bizarre or idiosyncratic interpretations of collection notices. *See Clomon*, 988 F.2d at 1318.

68.     To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading representations or means in connection with the collection of any debt and sets forth a non-exhaustive list of certain per se violations of false and deceptive collection conduct. *See* 15 U.S.C. § 1692e(1) - (16).

69.     The post-discharge Statements and letters Bayview sent to Plaintiff, as described hereinabove, violate 15 U.S.C. §1692e(2)(A) and (10) as follows:

"A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

\*\*\*

"(2) The false representation of—

(A) the character, amount, or legal status of any debt; or

\*\*\*

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."

70.     Bayview's actions at issue, as described hereinabove, are the manifestation of its practices and policies to ignore the provisions of the Bankruptcy Code applicable to it and illegally collect or attempt to collect pre-petition debts that have been discharged from debtors.

## VIII. GROUNDS FOR RELIEF – COUNT IV

### INVASION OF PRIVACY

71.   Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs 10-41, above, as if fully rewritten here in their entirety.

72.   Defendants' post-discharge conduct, as described hereinabove, when Bank of America acquired access to Plaintiff's consumer report and Bayview made illegal contacts with Plaintiff by sending him the Statements and correspondences at issue, constituted invasions of Plaintiff's private affairs. These invasions were ones that would be highly offensive to a reasonable person because confidential and sensitive personal and financial information is included a consumer report, and by law Defendants were forbidden to contact Plaintiff post-discharge regarding the subject discharged debt in accordance with the discharge injunction. Such wrongful acts caused injury to Plaintiff which resulted in his extreme emotional anguish, loss of time and inconvenience.

73.   Plaintiff's injuries resulted from Defendants' malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## IX. GROUNDS FOR RELIEF – COUNT V

### VIOLATION OF THE BANKRUPTCY DISCHARGE INJUNCTION

74.   Plaintiff repeats, re-alleges, and incorporates by reference Paragraphs 10-41, above, as if fully rewritten here in their entirety.

75.   At all times material to this proceeding, Defendants had actual knowledge of Plaintiff's Chapter 7 Bankruptcy Case and the discharge of the subject debt therein.

76.   Defendants failed to cease their debt collection activity on the Account and subject discharged debt when they became aware Plaintiff filed for bankruptcy protection and the

debt on the Account had been discharged in his Chapter 7 Bankruptcy Case, the Property surrendered, and even after the parties entered into the Settlement of the First Lawsuit, as evidenced by Bayview sending Plaintiff numerous Statements and letters seeking payment of the subject discharged debt or actions to benefit Defendants to coerce Plaintiff to pay the discharged debt. Also, Bank of America's misrepresentations and furnishing of false information to TransUnion was further evidence of Bank of America's harassment and attempts to collect the subject discharged debt; so was Bank of America's post-discharge accessing of Plaintiff's consumer report on multiple occasions without a lawful purpose.

77.     Defendants' aforesaid actions were willful acts and constitute efforts to collect discharged debt from Plaintiff in violation the discharge injunction of 11 U.S.C. §524(a). Defendant's failure to comply with the aforesaid laws, in light of being on notice of Plaintiff's Bankruptcy Case and discharge and even previously entering into the Settlement Agreement for the same type of collection action on the same discharged debt, illustrates their contempt for Federal law and the discharge injunction.

78.     The totality of the actions and circumstances at issue is evidence of Defendants' gross violation of the discharge injunction as set forth in 11 U.S.C. § 524(a)(1)-(3).

79.     The facts and background stated above demonstrate that Defendants willfully violated the orders and injunctions of the Bankruptcy Court as they concern Plaintiff's Bankruptcy Case and discharge. With this prima facie showing, the duty is on Defendants to show, as their only defense, a present inability to comply with the orders and injunctions of the Bankruptcy Court that goes beyond a mere assertion of inability. Failing a showing of a present inability to comply with the orders and injunctions of the Bankruptcy Court by

Defendants, Plaintiff must prevail on his claims, and Defendants must be held liable for willfully violating the orders and injunctions of the Bankruptcy Court with regard to the bankruptcy case filed by Plaintiff. Any defense put forth by Defendants in this proceeding can only constitute a good faith exception, as no other reasonable explanation can be made for the conduct and actions of Defendants. Any allegation of a good faith exception should not be allowed.

80.     Specifically, Defendants violated the part of the Bankruptcy Court's Discharge Order pertaining to 11 U.S.C. §524(a)(2) which "operates as an injunction against the commencement, or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtors, whether or not the discharge of such debt is waived;…'"

81.     No exceptions exist under 11 U.S.C. §524 or the other provisions of the United States Bankruptcy Code or other applicable law that permits the conduct of Defendants at issue with regard to the discharge injunction.

82.     The orders and injunctions of the Bankruptcy Court cannot be waived, except by the virtue of a properly filed and approved reaffirmation agreement, motion, stipulation or complaint. None of the aforementioned has been approved by the Bankruptcy Court here, and no waiver of the orders or injunctions of the Bankruptcy Court has occurred in Plaintiff's Bankruptcy Case as pertaining to the rights and remedies of Defendants.

83.     Also, there is no requirement of mitigation on the part of Plaintiff that is relevant to violations of the orders and injunctions of the Bankruptcy Court. Any attempt to burden Plaintiff with policing the misconduct of Defendants would be a complete derogation of the law. It is well settled that each party to an injunction or order of the Court is

responsible for ensuring its own compliance with the injunction or order and for shouldering the cost of compliance. Any such defense would constitute a collateral attack on the injunctions and orders of the Bankruptcy Court in this proceeding, which is prohibited. Any defense put forth by Defendants in this case can only constitute a claim of mitigation, as no other reasonable explanation can be made for the conduct and action of Defendant. No allegation of a mitigation as a defense should be allowed.

84.    Plaintiff has been injured and damaged by Defendants' actions and is entitled to recover judgment against Defendants for actual damages and punitive damages, plus an award of costs and reasonable attorney's fees, for violations of 11 U.S.C. §524, and pursuant to the Court's powers under 11 U.S.C. § 105.

85.    Plaintiff's injuries resulted from Defendant's malice which entitles Plaintiff to exemplary damages under Texas Civil Practice and Remedies Code §41.003(a).

## X. DAMAGES

86.    The conduct of Defendants at issue has proximately caused Plaintiff past and future monetary loss, past and future mental distress, emotional anguish and a discernable injury to Plaintiff's emotional state and other damages, evidence for which will be presented to the jury.

87.    After being afforded a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that, at all relevant times, Defendants knew and continue to know that a discharge order granted by a U.S. Bankruptcy Court means discharged debts are no longer collectible from discharged debtor(s), but Bank of America has made a corporate decision to willfully and maliciously act contrary to this knowledge in its calculated decision to violate its duty and requirement to properly furnish accurate

information to the CRAs with regard to the Account.

88.     After a reasonable time to conduct discovery in this case, Plaintiff believes he will be able to show that all actions at issue taken by employees, agents, servants, or representatives of any type for Defendants were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

89.     After a reasonable time to conduct discovery, Plaintiff believes he will be able to show that all actions taken by Defendants at issue were conducted maliciously, wantonly, recklessly, intentionally, knowingly, and/or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the law.

90.     At all relevant times, Defendants knew, and continue to know, that a discharge order issued from a U.S. Bankruptcy Court means discharged debt is no longer legally collectible, but Defendants have made a corporate decision to willfully and maliciously act contrary to their knowledge in their calculated decision to violate Plaintiff's right to privacy by impermissibly accessing Plaintiff's credit reports and continuing to send billing statements and letter(s) to Plaintiff after the discharge was granted in his Bankruptcy Case.

91.     After a reasonable time for discovery, Plaintiff believes he will be able to show that despite receiving dozens, if not hundreds, of disputes complaining Bank of America was impermissibly accessing consumer credit reports for debtors whose debts it was servicing had been discharged in bankruptcy, Bank of America intentionally and knowingly has not corrected its policy of engaging in this action.

92.     After a reasonable time for discovery, Plaintiff believes he will be able to show that despite receiving dozens, if not hundreds, of disputes complaining Bayview was sending debtors on accounts for which Bayview was servicing, as a subservicer for Bank of America and individually, had been discharged in bankruptcy, Bank of America and Bayview have not corrected their policy of intentionally, knowingly and malciousy engaging in this action.

93.     After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions at issue taken by employees, agents, servants, or representatives of any type for Defendants were taken in the line and scope of such individuals' (or entities') employment, agency, or representation.

94.     After a reasonable time for discovery, Plaintiff believes he will be able to show that all actions taken by Defendants at issue were performed maliciously, wantonly, recklessly, intentionally and/or willfully, and with either the desire to harm Plaintiff and/or with the knowledge that their actions would very likely harm Plaintiff and/or that their actions were taken in violation of the law.

95.     After a reasonable time for discovery, Plaintiff believes he will be able to show that Defendants have engaged in a pattern and practice of wrongful and unlawful behavior with respect to accounts and consumer reports and Defendants are subject to punitive damages, statutory damages, and all other appropriate measures to punish and deter similar future conduct by Defendant and similar companies.

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Roger Lynn Burrow, prays the Court will:

A.      Enter judgment in favor of Plaintiff and against Defendants for actual damages, costs, and reasonable and necessary attorney's fees as provided by the Fair Credit Reporting Act, Fair Debt Collection Practices Act, the Texas Finance Code; invasion of privacy, and for violations of the discharge injunction;

B.      Find that appropriate circumstances exist for an award of punitive damages to Plaintiff;

C.      Award Plaintiff punitive damages against the Defendant;

D.      Award Plaintiff pre-judgment and post-judgment interest as allowed by law; and

E.      Grant such other and further relief, in law or equity, to which Plaintiff might show himself justly entitled.

Respectfully submitted,

_____/s/ James J. Manchee_____
James J. Manchee
State Bar Number 00796988
jim@mancheelawfirm.com
Marilyn S. Altamira
State Bar Number 00796119
maltamira@mancheelawfirm.com
Manchee & Manchee, PC
12221 Merit Drive, Suite 950
Dallas, Texas 75251
(972) 960-2240 (telephone)
(972) 233-0713 (fax)

ATTORNEYS FOR PLAINTIFF

## JURY DEMAND

Plaintiff hereby demands a trial to a jury on all issues so triable.

 6-2-15                                      /s/ James J. Manchee_____
Date                                         James J. Manchee